**Opinion issued December 31, 2018**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-17-00681-CV

_____

## CHARLES WALL AND CECELIA WALL, Appellants

## V.

## STATE FARM LLOYDS, Appellee

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-20688**

---

## O P I N I O N

Charles Wall and Cecilia Wall sued State Farm Lloyds for breach of contract and insurance code violations, among other things. The jury found no breach of contract but awarded the Walls damages for their insurance code claim. The trial court rendered a take-nothing judgment. In three issues on appeal, the Walls argue

that (1) the trial court erred by denying their motion for judgment notwithstanding the verdict on the jury's response to the breach-of-contract liability question, (2) they were entitled to judgment on their insurance-code violations claim, and (3), in the alternative, they are entitled to a new trial.

We affirm.

## Background

The Walls lived in Tomball, Texas in 2013. Their property was insured by State Farm. On April 27, 2013, a hailstorm struck the area. The Walls filed a claim, asserting damage to their roof. State Farm denied the claim. The Walls hired an appraiser and initiated an appraisal process under the terms of the insurance policy. They later terminated the process.

In December 2013, State Farm sent a second appraiser to the home. This appraiser found hail damage and recommended repairing the entire roof. State Farm estimated that the cost of replacement minus depreciation and the Walls' deductible resulted in $6,878.87 owed under the policy. It issued a check in that amount to the Walls. It also later issued a check for $851.47, which State Farm determined was owed as a penalty based on its determination that it had violated "subchapter B of Chapter 542 of the Texas Insurance Code."

The Walls sent State Farm a demand letter, claiming they were owed $65,994.95 more in damages, including attorneys' fees. In their demand, the Walls

2

asserted damage to their fence and garage door in addition to the roof. After a third inspection, State Farm denied that any additional money was owed.

The Walls filed suit. The case was tried to a jury. Question Number 6 asked the jury, "Did State Farm fail to comply with the Policy?" The question also included this instruction: "State Farm failed to comply with the Policy if it failed to pay for the damages that resulted from physical loss to the dwelling on the Property caused by wind or hail damage." The jury answered, "No."

Question Number 9 asked the jury, "Did State Farm engage in any unfair or deceptive act or practice that caused damages to Charles and Ceclia Wall?" The question defined "unfair or deceptive act or practice" based on six of the grounds identified in the Texas Insurance Code.[1] The jury answered, "Yes."

Question Number 10 was contingent on the jury answering "yes" to Question Number 9. It asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Charles and Cecelia Wall for their damages, if any, that were caused by such unfair or deceptive act or practice?" The question also included this instruction: "Do not include in your answer any amount that Charles and Cecelia Wall could have avoided by the exercise of reasonable care." The question gave the jury one category of damages: "The actual cash value at the time of the loss of the damaged part of the Property." The jury answered, "$14,500."

---

[1]    *See* TEX. INS. CODE § 541.060(a)(1), (a)(2)(A), (a)(3), (a)(4)(A), (a)(4)(B), (a)(7).

3

After trial, the parties filed motions related to the verdict. The Walls filed a motion asking the trial court to disregard the jury's answer to Question Number 6, the breach of contract question. State Farm filed a motion asking for a judgment on the verdict. State Farm argued that the jury's answer to Question Number 6 prevented any recovery. The trial court abated the case pending an opinion from the Supreme Court of Texas. After the opinion issued,[2] the trial court reinstated the case and rendered a take-nothing judgment against the Walls.

## Standard of Review

We review a challenge to a trial court's ruling on a motion for JNOV under a legal-sufficiency standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). To successfully challenge the legal sufficiency of an adverse finding on which it bore the burden of proof, a party must show that the evidence conclusively proves all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Pham v. Harris Cty. Rentals, L.L.C.*, 455 S.W.3d 702, 709 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

In contrast, a no-evidence challenge "'will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact,

---

[2] *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). The opinion issued originally in April 2017. Since then, the court has issued an opinion on rehearing. *See id.* at 484.

(c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.'" *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

In our legal-sufficiency review, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex. 2003). With that evidence, we review "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. . . . [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 827.

### Breach of Contract

In their first issue, the Walls argue that the trial court erred by denying their motion for judgment notwithstanding the verdict on the jury's response to Question Number 6, the breach-of-contract liability question.

The Walls argue they established as a matter of law that the jury's answer to Question Number 6 should have been yes. Question Number 6 asked the jury, "Did State Farm fail to comply with the Policy?" The question also included this instruction: "State Farm failed to comply with the Policy if it failed to pay for the

5

damages that resulted from physical loss to the dwelling on the Property caused by wind or hail damage." The jury answered, "No."

The Walls argue that they proved their claim because the evidence shows that, while State Farm paid on the policy, they paid late. They argue that "a subsequent, late payment does not cure State's Farm's breach." The question, however, defined a failure to comply with the policy as "fail[ure] to pay for the damages." By the Walls' own admission, State Farm did this. Even if untimely payment would otherwise constitute a failure to comply with the policy, this was not included in the definition for the jury.

When there is no objection to a question or instruction, we review the evidence to support the question or instruction as written. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). The Walls did not object to the definition of failure to comply with the policy. Accordingly, late payment does not establish failure to comply with the policy.

We overrule the Walls' first issue.

## Insurance Code Violations

In their second issue, the Walls argue they were entitled to a judgment on their insurance-code violations claim. Both parties agree the outcome of this issue is controlled by *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018).

In *Menchaca*, the homeowner suffered damage from Hurricane Ike in Galveston, Texas. *Id.* at 485. USAA determined that the damage did not exceed the deductible and did not pay any benefits as a result. *Id.* The homeowner sued, alleging breach of contract and insurance code violations. *Id.* The jury found no breach of contract but did find insurance code violations. *Id.* at 485–86.

For the insurance code violations, the liability question "asked whether USAA engaged in various unfair or deceptive practices, including whether USAA refused 'to pay a claim without conducting a reasonable investigation with respect to' that claim." *Id.* at 486. The damages question tasked the jury with determining "the amount of Menchaca's damages that resulted from either USAA's failure to comply with the policy or its statutory violations, calculated as 'the difference, if any, between the amount USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid.'" *Id.* The trial court disregarded the jury's answer to the breach-of-contract question and awarded damages to the homeowner under the insurance-code-violations claim. *Id.*

The main issue on appeal was "whether an insured can recover policy benefits as 'actual damages' caused by an insurer's statutory violation absent a finding that the insured had a contractual right to the benefits under the insurance policy." *Id.* at 489. The court held that, in most cases, the answer is no. *Id.* The court also held that this did not necessarily mean that a jury must find breach of the policy before it

7

can find statutory violations. *Id.* at 494. "Thus, although we have referred to both 'breach' and 'coverage,' what matters for purposes of causation under the statute is whether the insured was entitled to receive benefits under the policy." *Id.* Thus, "the general rule [is] that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." *Id.* at 495.

To recover policy benefits as actual damages for a statutory violation, the insurer's violation under the statute must have caused the loss of the benefits. *Id.* "Because the Insurance Code provides that the statutory remedies are cumulative of other remedies, we concluded that the insureds could elect to recover the benefits under the statute even though they also could have asserted a breach-of-contract claim." *Id.* To recover policy benefits from an insurance-code violation claim, then, the fact finder "must find that the violation caused the insured to lose benefits she was otherwise entitled to receive under the policy." *Id.* at 503.

An exception to the general rule is that an insured can recover policy benefits that the insured is not entitled to under the policy if the insurer's conduct caused the insured to lose the rights to those benefits. *Id.* at 497. This can arise either when the insurer misrepresents the policy or when it commits a violation that causes an "insured to lose a contractual right to benefits that it otherwise would have had." *Id.*

8

In contrast to these rules, "if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id.* at 499. The damages must be truly independent, however. *Id.* at 499–500. This rule "does not apply if the insured's statutory or extra-contractual claims 'are predicated on [the loss] being covered under the insurance policy' or if the damages 'flow' or 'stem' from the denial of the claim for policy." *Id.* at 500 (quoting *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 920 (Tex. 2005); *Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 198 (Tex. 1998)). It is worth noting that the possibility of an insurer causing independent injury is so rare that it has not yet been found in Texas case law. *Id.*

Based on these rules, the court rejected the insurer's argument that the answer to the breach of contract liability question defeated the homeowner's right to recover under her insurance-code violations claim. *Id.* at 504. The court held, however, that the trial court erred by disregarding the jury's answer to the liability question on the breach-of-contract claim. *Id.* The court further held that the jury's answer to the liability question on the breach-of-contract claim created an irreconcilable and fatal conflict with the answers to the insurance-code violations claim. *Id.* A plurality held that a judgment based on a fatal conflict does not constitute fundamental error and that the error was not preserved. *Id.* at 504–05.

9

Based on *Menchaca*, we hold that the jury's answer to Question Number 6, the breach-of-contract liability question, does not, by itself, defeat the Walls' insurance-code violations claim. *See id.* at 504. We further hold, however, that the jury's answers to the questions for the insurance-code violations claim do not support a judgment for the Walls on the claim.

As we have recognized, *Menchaca* holds that, to recover policy benefits from an insurance-code violation claim, the fact finder "must find that the violation caused the insured to lose benefits she was otherwise entitled to receive under the policy." *Id.* at 503. The court held that the jury's answers to the questions for the insurance-code violations claims satisfied this requirement. *See id.* at 506. The liability question asked if the insurer engaged in certain acts that would constitute statutory violations. *Id.* at 485–86, 506. The other question "was a causation-and-damages question." *Id.* at 506. It asked the jury to find the amount of damages but limited the damages to those the homeowner should have received under the policy. *Id.*

Here, the damages question does not also incorporate a causation determination. It asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Charles and Cecelia Wall for their damages, if any, that were caused by such unfair or deceptive act or practice?" The only instruction provided, "Do not included in your answer any amount that Charles and Cecelia Wall could have avoided by the exercise of reasonable care." The question

10

gave the jury one category of damages: "The actual cash value at the time of the loss of the damaged part of the Property." Nothing in the question limited the damages to those that would be available under the policy. Accordingly, the jury was never called on to determine if the damages it awarded was available under the policy. *See id.* at 503 (holding fact finder must find that violation caused insured to lose benefits she was otherwise entitled to receive under policy).

This distinction is critical. In *Menchaca*, the homeowner "obtained two conflicting findings." *Id.* at 507. First, under the breach-of-contract liability question, the jury determined that the homeowner did not have the right to receive policy benefits. *Id.* Second, under the insurance code violations causation-and-damages question, the jury determined that the homeowner "did have the right to policy benefits." *Id.* "If [the latter question] did not contain that finding, *the[n] no conflict would exist*." *Id.* at (emphasis added).

Here, while the Walls did not argue that they had suffered damages independent of the policy, they did assert damages to the fence and garage that State Farm argued was not recoverable under the policy because any damages constituted normal wear and tear. The jury's answers to the questions in the charge, then, can be reconciled: the damages awarded under the insurance code violations claim were damages that were not available under the policy. *See Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018) (holding courts must uphold jury verdict if any

11

reasonable version of the evidence supports it by reconciling apparent conflicts in jury's findings if reasonably possible considering pleadings and evidence, manner of submission, and other findings considered as a whole).

The Walls did not argue that State Farm's insurance code violations caused them to lose the benefits under the policy, and the jury did not make any relevant determination to that end. Accordingly, the Walls cannot recover the damages awarded by the jury under the insurance-code violations claim. *See Menchaca*, 545 S.W.3d at 494 (holding general rule is that insured cannot recover policy benefits as actual damages for insurer's statutory violation if insured has no right to those benefits under policy).

We overrule the Walls' second issue.

## Remand

In their third issue, the Walls argue that, if we do not render a judgment in their favor, we should remand the case for a new trial in the interest of justice so that the parties can try the case with the benefit of *Menchaca*. In *Menchaca*, a plurality of the Supreme Court of Texas, while not finding error in the trial court's judgment, remanded for a new trial *in the interest of justice* "in light of the parties' obvious and understandable confusion over our relevant precedent and the effect of that confusion on their arguments in this case." *Id.* at 521. It did so under authority of

rule 60.3 of the Texas Rules of Appellate Procedure. *Id.* (citing TEX. R. APP. P. 60.3).

Rule 60.3 provides, "When reversing the court of appeals' judgment, the Supreme Court may, in the interest of justice, remand the case to the trial court even if a rendition of judgment is otherwise appropriate." TEX. R. APP. P. 60.3. The corollary rule for intermediate appellate courts provides, "When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial." TEX. R. APP. P. 43.3.

Based on this rule, intermediate courts of appeals are only authorized to remand for a new trial in the interest of justice when we have first found error warranting reversal in the trial court's judgment. *Id.*; *see also Chrismon v. Brown*, 246 S.W.3d 102, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding, while Supreme Court of Texas has authority to reverse and remand errorless judgment in interest of justice, intermediate courts of appeals can only remand judgment in interest of justice when reversible error has been found).

We have not found any reversible error in the trial court's judgment. Accordingly, we lack the authority to remand in the interest of justice. *See* TEX. R. APP. P. 43.3.

We overrule the Walls' third issue.

13

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

Justice Massengale, concurring in the judgment.